Welcome to the Ninth Circuit. I'm pleased to be joined by my colleagues Judge Forrest and Judge Sung. We welcome counsel who will be arguing today in person and by video. We'd ask that you just try and keep to the time limits and sum up as time's expiring. Let us know if you want to reserve any time for rebuttal. We'll go ahead and proceed. We've got four cases that have been submitted on the briefs. Alfredo, Correla-Vallejo v. Garland, Munoz v. Garland, Zambrano v. Garland, Alvarado-Flores v. Garland. They've all been submitted. We'll start with Rodarte v. Gutierrez, case number 21-35973. Good morning, Your Honor, members of the court. I'd like to reserve five minutes, please. Good morning, counsel. This case is a case that involves an all-too-serious crime, domestic violence, involving a victim being particularly important for the court to consider. First of all, the deputy that I'm representing, Mr. Gutierrez, was dispatched by 911 as a Skagit County deputy sheriff. No contact with any of these people prior to that dispatch. He went to the residence. He did not go to the residence. He met the victim at the roadway wherein she explained that she had been assaulted by her uncle. And at that point, he had observed marks on her neck and her arm and on her eye that are part of the excerpts of the record. He didn't take any photographs at that time? He did not take photographs at that time. What he did was he took the statement, he saw, he observed the marks on the victim, and then he went to the house and contacted the plaintiff. Counsel, I just want to be clear, you referred to victim, but the jury tried this case and concluded that the defendant was not guilty. So I'm not sure that's the proper language to be using here when a jury has made a finding that this wasn't an assault. Very well. She was acquitted at trial, or the plaintiff was acquitted at trial. In any event, the... Can I ask about the trial? Was evidence of fabrication raised at the trial? No. The... Rodarte didn't raise any evidence of fabrication at the trial? Well, I'm sorry, he did. He said that it never happened, and his wife said that she never observed any physical abuse. But did this actual dispute, did he claim at trial that... I assume the photographs were shown at trial. Correct. And did Rodarte contest the photographs at trial and say those were, you know, falsified after the fact? I don't believe he did. I do not believe he did. And so, as your Honor is correct, she was... Or the jury found that he was not guilty of domestic violence. Can we move on from the trial? I think there is an indication that Mr. Gutierrez did not testify in support of his police report at trial. Do you know why that was the case? I do know why. He was no longer with the department at that time, and the Skagit Valley, or Skagit County Sheriff's Department has a policy that if an officer is no longer employed by the agency, they don't call him back to testify in criminal cases. So the only testimony that was at the trial was the alleged victim, and the other officer who did not observe, or did not take a statement from... But the photographs still came in because it was a... He didn't need to testify to the photograph he took? How did it come in if he didn't testify? That I can't answer directly as far as the claim is... You're stating that Rodarte's first claim of falsification of evidence came after the trial. Correct. And from that chronology, then after he contacts the alleged victim and then makes contact with Mr. Rodarte, he formulates probable cause that domestic violence had occurred, spoke with the wife, and I think what's important here is the district court, with all due respect, did not analyze the requirements under Spencer v. Peters on deliberate fabrication of evidence from the standpoint that the wife's comments later that she did not make this statement, that Detective Gutierrez said she did, she never signed that statement. The statement was not used against him in any criminal prosecution. It's pure speculation to say that the prosecuting attorney that she utilized that statement... The statement wouldn't be used against... Wait, her statement... Hold on. So you're saying in the criminal trial, the statement, Rodarte's write-up that the wife, that Rodarte, excuse me, Gutierrez's write-up, that Rodarte's wife said that was not introduced at trial? Correct. But it was part of what was referred to the prosecutor for a probable cause? Well, it was not part of the prosecutor's probable cause statement. How do you know that? Because if you look at the probable cause statement that's part of the record, she did not refer to that statement at all. Where is that? Can you point me to that in the record? I think the point you're briefing that the prosecutor could have gotten to a probable cause basis for arrest without the wife's statement one way or the other. Correct. And then you say, well, it's speculation that the prosecutor would have relied on the wife's statement in making his charging decision. And true, but isn't it also speculation that he didn't? And so that's the point, isn't it? I mean, if we had something in this record from the prosecutor saying, these are the things that I relied on in concluding that there was probable cause, then you could maybe break that causal chain, but I don't see that here. Well, I think it's our point exactly. I think it's the burdens on the plaintiff to show that somehow the prosecutor relied on a statement that was not used against him at all. Why isn't it a reasonable inference that the prosecutor is going to look at everything that the officers give him, including this wife's statement, unless he tells us that he did, or he or she tells us that they didn't? Well, on page 7677 of the record is the probable cause statement, and the prosecutor who signed the probable cause statement submitting it to the Superior Court did not say she relied on anything from the wife. Well, again, that doesn't directly address Judge Forrest's question, which is why isn't it a reasonable inference for the district court to make that if the falsified or allegedly falsified police report, which included the allegedly falsified statements by Mr. Rodarte's wife, were included in the file given to the prosecutor, that the prosecutor considered them. In addition, I believe one of the issues is material omissions, which is that if it was a material omission, if it was falsified that the wife denied, in fact said the complete opposite account of what occurred, if that information wasn't presented to the prosecutor, why isn't there a causal link? Well, that information may have been, I think the entire investigative file was presented to the prosecutor, but I think the She did? She didn't. No, I'm reading. That's a point I'm making. But the prosecutor did talk about visually verified injuries on the neck and left cheek. Well, I'm sorry. Let me make sure. This is an affidavit I was able to visually verify. Is that signed by the prosecutor or that's signed by Gutierrez? That's signed by Gutierrez. She's relying on his probable cause statement for her. I see. So that's still. So even if you're right, that if it's not in the affidavit, which is an interesting, I hadn't appreciated this, but if it's not in the prosecutor's affidavit or the affidavit that is submitted to the court, presumably then your point is the evidence in here was enough for the probable cause or else the prosecutor would have required, you know, some does still say verified injuries to the neck and left cheek. So doesn't that still raise the question of whether the photographs were falsified? I think that's pure speculation as well, because even though Mr Gutierrez or the plaintiff says that while being transported, he overheard a statement which is denied, by the way, but he overheard a statement that we need to do more to sum up the record. He took photographs at that time, but the family members were there as well. Why isn't that just a factual dispute that needs to be resolved? Well, I mean, whether you say in your report, I see, I see physical marks on you as an abuse victim, and then I come back later and I take pictures. Nowhere, and the district court admitted this as well, nowhere does it say, you know, I need to take photographs of you. I need to strangle you so that the photographs we see in this record show that you have been physically injured by your uncle. Well, in your opinion, what would be required to create a physical, a factual dispute? Rodarte would have to say, I saw him get out a pen and mark up her cheek. That would create, you agree, that would create a factual dispute. Yes, if you saw that. But you think this is just too much inference? It's too much inference, plus what's amazing about the case, it is a very interesting case, because what's amazing is three family members saw her at the same time, and the plaintiff's attorney took the depositions after the summary judgments had been submitted, and the three family members all say she was, had excited utterances of being an abuse victim. She had the marks, she was crying, and she said her uncle had done it to her. So there is clearly a fact question, but we go back to Rodarte's declaration, and here's a quote. He overheard the detective talking with the niece, telling her, quote, they needed to and that they had to fix it so it looked real. The implication of that clearly is that the officer and the niece are talking about massaging her story, and this, this PC affidavit that is the basis for the prosecutor's charging decision, apparently, clearly references the niece's story. So how is that, I mean, you might have an argument, and again, like Judge Nelson, maybe you have an argument about the wife statement, and whether that was relied on. I hadn't thought all the way through, but I don't see how you have an argument, at least at this stage of the case, with regard to the niece. Well, because why, why isn't there evidence, Your Honor, respectfully, of the niece saying that I had done something in collaboration with Detective Guglielmo? Why is that needed? We have to, at summary judgment, take the facts in the light most favorable to the non-moving party, which is Rodarte, and this evidence is in the record. And as the district court explained, it can't just pretend that that isn't there. Is it credible? I don't know, but that's for the fact finder to find out. It is in the record. Well, the conspiracy claim was dismissed. The conspiracy is presumably between the detective and the county, not the detective and the niece. No, I believe it was the detective and the niece, Your Honor. No, what, show me where that is in the record. Well, that's how I'm reading the complaint, because... Well, I just read the district court's decision just a few minutes ago in preparation for this hearing today, and the part of the district court's decision at summary judgment that addresses the conspiracy claim makes it expressly clear that the district court was resolving a conspiracy allegation as between Gutierrez and the county. If I can, I see my time's running out, but if I could just clarify briefly, I think the probable cause has already been established, and I cited to the court the Evans case, which stands for the proposition that if probable cause has been established before they went back, he's already under arrest before they went back. How do you reconcile that argument that so long as there's some other basis for a probable cause finding with this court's decisions in Spencer and Richards, which hold that, you know, the fact that without the falsified evidence, there might be probable cause doesn't mean there is no claim for falsified evidence. Well, I think Spencer was relied on almost exclusively by the district court, and I think it was misplaced reliance, because Spencer dealt with the victim, the child abuse victims, sexual abuse victims, saying that, I never said that, I never was abused, it never happened to me. You don't have the victim in this case saying that, or the alleged victim, excuse me. You don't have the alleged victim in this case saying that. You don't have anyone questioning her or impeaching her that those marks were placed there by yourself or by someone else. And with all due respect, those photographs are rather graphic, and it's hard pressed to say that once that probable cause has been established, once an arrest has been made, that we're going to go back and shore up the case by grabbing a woman around the neck in the manner we've seen. But most of the other circuits who have addressed this issue about whether the existence of probable cause affects the viability of a claim that an officer falsified evidence makes no difference. Well, I think once you have probable cause, if there's fabricated evidence, I don't think under qualified immunity analysis, there's case law out there that says that that somehow affects the case. And that's why the qualified immunity analysis in this case was virtually nonexistent. Well, on the motion to make consideration, the district court beefed up its qualified immunity analysis. That doesn't mean they're correct either. Okay, do you want to reserve for a rebuttal? Thank you so much. I'm on I wasn't sure. Good morning, Your Honor. Jesse Valdez, or Jesus Valdez for the on behalf of Peli. We're here today to request the court to affirm the district court when it denied Mr. Gutierrez's motion for summer judging because there are material facts in dispute. The parties have introduced conflicting evidence. Counsel, what about the the fact that the statement from road arts wife was not included in the probable cause affidavit? Does that allow us? Does that preclude us from looking at that statement to determine whether there was a dispute of material fact here? I would say no, because I believe the prosecutor would have reviewed the entire file, included that falsified police report. Your Honor. But the problem I have with that is it does. What case? First of all, can you point me to a case with that? But the second, the bigger problem I have with that is presumably you could. I mean, a prosecutor is sifting through information and, you know, if they're doing their job there, you know, they're helping the officer create the probable cause affidavit. And if if the prosecutor has questions about evidence, thinks it might be falsified or wouldn't stand up and says, hey, don't rely on this. Isn't that a good thing? I mean, doesn't this suggest that the probable cause affidavit has written was enough to to to support the arrest? And clearly the the the officer or excuse me, the prosecutor didn't think that the wife statement needed to be in there. I would disagree with that because I believe the prosecutor has offices for this where they review information and they take into the information. So all the information is taken into the prosecutor because they want to do a good job and verify the information. That's one of them. The police report. Now, at the summary judgment phase, all reasonable inferences have to be taken in our favor. Your Honor. So on a motion for summary judgment, is it reasonable to infer that the prosecutor would review the police report before filing charges? And the defendant has not offered. I don't disagree with that. I don't I think you're entitled to that inference. But my question is, is there a case that says if the prosecutor doesn't include it in the report that's filed with the court for the for the arrest, for the probable cause for arrest? What is the case that says the problem is if we go that far, we're basically saying if 100 pieces of evidence were presented to the prosecutor and he he has questions about two or three of them and doesn't put him into the probable cause affidavit. But there's 97 that he puts in. Your position would be, well, that I have a 1983 action because there was falsified information that was in this heap of information that came forward. That seems problematic to me. Well, I guess the equation would be what was tainted and what was not. Your Honor. Here, like in the Evans case, which my colleague has cited, the court went and said, OK, hey, this testimony was tainted over here. We'll take that out of the equation. Correct. And here here is the other 11 items that we have for probable cause. In this case, we don't have that. In this case, we have the where the probable cause statement says a 10 year old daughter. And in Washington state, that would even be a question. There's no there's no question. Hold on, counsel. There's no question that that was enough for probable cause. I mean, you you you he was charged. Your client was acquitted. But there was never a challenge that that that the 10 year old daughter's testimony wasn't enough. But 10 year old daughter never testified, Your Honor. But the information is. Well, who's cited? Is she not referenced in the. Hold on. She she never came into. This is by the offending officer. Well, isn't Digna Digna is the 10 year old daughter, right? Oh, oh, oh, that's a different. Oh, that's the alleged victim. That's the alleged victim. So they didn't even rely on the 10 year old daughter in the in the affidavit. Yes, they did. It's in the affidavit, and that is incorrect. It says right there, the 10 year old daughter. And then they have another statement right there. Oh, yeah, yeah, yeah. And what I'm trying to say, Your Honor, is when. Well, but all that's about the 10 year old daughter is he took her cell phone. Well, but he also references the son. Thomas. Yeah, but none of that was challenged. And that's the thing, Your Honor. My client's right here. I just so he hasn't gone and it's probably got unnoticed. Our Spanish speakers. English is not the first language. So was it challenged that they're at the probable cause hearing? It was challenged at the hearing itself at the trial, not at the probable cause. There was never a challenge about the falsified statements. So it was never litigated, Your Honor. Nobody said anything about this. They knew this false thing, but it was never argued. So when he said, oh, it was argued after the fact. No, it was brought up because he didn't know. Now, is there communication issues? Well, we're going to say, yes, there was. You look at that police report. You look at the statements in there, the falsified one and this affidavit. You could see, Your Honor, my clients don't use that language. That's not everyday language. And when they speak English, they speak. It's passed by. Not that they understand. So when we're talking about this court settings, this court proceedings, they're not understanding what's occurring. Your Honor, unless there's an interpreter there that they actually know. So that's why I would say I would take issue with this when you say, oh, and with this probable cause, I would say this probable cause is tainted. The whole entire thing is tainted. When my client said he called, Dignan says, we got to fix this. That's where the taint begins. I understand. And that seems to me to still be something we're going to have to grapple with. I'm asking more about the Rodart's wife statement. It seems to me that because it's not included in the probable cause affidavit, that we can't consider that for purposes of whether that falsified information was used because it wasn't used. I mean, it wasn't used for the judge to sign off on the on the arrest warrant. Well, that may be so, but we don't know if that was if it wasn't a consideration for the prosecutor to bring charging files, Your Honor. And that's what we're arguing. What was it? So do you have any case you do have any analogous case that would preclude that would say that we have to consider any evidence presented to the prosecutor, whether or not it makes it into the into the affidavit? Well, as for the affidavit, I don't have an analogous case. What I would say, Your Honor, is if the the appellant wants to make an argument, present the evidence. What's the evidence? Because at this phase, at summary judgment phase, it's an R inference. Your Honor, you have to assume that most likely it are inference, not the appellants. And that's what summary judgment stands for. So what is it? What's the reasonable inference? Is it reasonable to say that the prosecutor would have taken that in account? We would argue, yes, it is. It is reasonable. Tell us why it's not. Because it wasn't in the affidavit. But is that a reason? But at summary judgment phase, is that is that an inference that who is that inference being taken to? Not for the non-moving party. That contradicts summary judgment phase. Let's talk about the let's talk about the photograph. Is that enough? Is that enough? Just I mean. To for him to say he heard the statement of we've got to fix this, that in your view, that's enough to make the inference that this statement is false in the probable cause affidavit, where he says the officer Gutierrez says I was able to visually verify injuries on the neck and left cheek of Dinga that are consistent with strangulation. And you're saying that is that that's a falsified statement right there because the officer said, hey, we've got to fix this or a factual dispute, whether it's there's a factual dispute, Your Honor, because we have declarations from my client and his wife saying there was no bruising. There was no marks on her neck, Your Honor. That's what's clear. That's in front of the record. Now you have officer or formerly officer Gutierrez saying, no, no, no, I was there. Well, there's a contradiction. There's conflicting facts. Now the Ninth Circuit has spoken as to declarations. And they and they're my colleague has said, hey, well, that's a self-serving declaration. Yeah, but the Ninth Circuit has said declarations oftentimes will be self-serving and properly so, because otherwise there would be no point in a party submitting them. That's in United States v. Shumway, 199F3D, 1093 Ninth Circuit. It also went on to state in that case, in most cases, consequently, that an affidavit is self-serving based on its credibility, not on its cognizability for purposes of establishing the genuine issue of material fact. They did carve out instances where, hey, we can set aside self-serving declarations. This is only if it states conclusions and not facts, as would be admissible in evidence, can a court disregard a self-serving declarations for purposes of sovereign judgment. And we submit that is not the case here with these declarations. They submit facts, not conclusions. There is factual contentions. So now the Court of Appeals has said, hey, you got to look at the declarations as true at this phase. Now if there's a credibility issue, let the jury decide it. That's the realm of the jury, not of the court. The jury can decide, we believe you, we don't believe you. But at this point, we don't. And as for the declaration of even Geraldo's wife, we take an issue where they said there was a recanting. It wasn't a recanting, it was just a mischaracterization of the whole entire conversation. She knew what was going on and she didn't agree with it. So the only thing we would agree with is that she didn't want to sign it. And the reason she didn't want to sign it, because she knew what was wrong and it was taking false statements, and it was mischaracterizing manufacturing what actually occurred. And I want to make sure I addressed your question, Your Honor. That's what you posed to me. No, no, you posed me a question. So I just want to make sure I was addressed. Oh, yeah, no, I appreciate your answer. So, and just at this phase, like I would go on, the disavowable inferences, Your Honor, that have to be taken in light of my client, the fabricated police report, the bruises or no bruises, the timing of all that. We have the pictures, like when were the pictures taken? That's a question. There's a question of fact that said that. Were you counsel at the criminal trial? No, I wasn't, Your Honor. Do you know whether, I mean, it's interesting, it sounds like the photographs were not introduced at trial. Was there testimony about the strangulation? And was there contested testimony about the strangulation at the trial itself? I believe there was, Your Honor, that's what was contested. And there was also argument about the fabricated police report at that time. Oh, there was evidence of the fabricated police report given at the criminal trial. That's when it was first argued. There, Your Honor. And they said these were false reports. That's when the wife came and testified and said, I did not say that. I never said that. That police report is wrong and incorrect. And that was the first time. It wasn't at any probable cause or anything like that. It was actually at the trial. Because that's when it was first litigated. So, we would just go further and say the disputed facts, and I don't want to go through all of them, though, Your Honor, is the marks on the neck. Digna says there was marks. Two other witnesses said there was not marks. And even the whole incident, how it began, whether who was the victim, who was the aggressor, and who was assaulted. My client and his wife said he was defending himself. He didn't assault anybody. Now, we have a question, in fact, whether it's reasonable to infer, hey, when the prosecutor looked at this false police report, which we allege, and there was these charging documents. She's doing this to say, look, I'm going to protect the wife, maybe, because this is an allegedly abusive husband, and I need to protect him when that's not the case. When the wife comes out and testifies, this did not occur. These are not the facts. These are false statements created and manufactured by formerly officery terrorists. None of this is true. And do we allow that? Was there any evidence of Gutierrez's motivation for falsifying this? That's going to be litigated, why it would be the motivation, Your Honor, yes. What's that? It's going to be litigated. I mean, why he's no longer working there. Do you have any evidence about why he's no longer working there? Yes. It includes other falsifications of reports and things? Untruthfulness. Okay. Do you have anything else, counsel? Not at this time, Your Honor, no. All right. We'll give one minute for rebuttal. Your Honor, first of all, the last colloquy with the court, there's nothing in the record about any prior acts that would have any validity in this proceeding. The wife didn't sign this statement under penalty of perjury, which every witness statement is signed under penalty of perjury. The fact that it wasn't signed, I think, is a reasonable inference as to why the prosecutor did not include it in the probable cause statement. If you look at the plaintiff's declaration, he concedes that there was a domestic violence assault. The niece is biting his thumb. She says it's self-defense. He's scrambling with her. Assaultive behavior is going on in a domestic violence situation. The court is clear, the Supreme Court is clear, that you can't just simply rely on a general statement of constitutional law, and that would be sufficient to do away with qualified immunity. And I would suggest respectfully that in this day and age, when law enforcement is criticized oftentimes for what they do, and domestic violence is a major problem in our society, especially to female victims, that you can't just say it didn't happen. It happens all the time in every criminal case. The defendant, the criminal defendant, says it didn't happen. The officer is lying. The officer is planting evidence. But from a qualified immunity standpoint, he had probable cause at the time he made the arrest, and all this stuff after the fact is not relevant, and it shouldn't do away with the protections of qualified immunity that should not be watered down in this case. Thank you for your time. Thank you to both counsel for your arguments in the case. The case is now submitted.
judges: NELSON, FORREST, SUNG